UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.      Case No. 20-CR-88

JORGE BARRAGAN, et al.,

    Defendants.

# REPORT AND RECOMMENDATION

**1. Background**

Jorge Barragan is charged along with fifteen others with conspiracy to distribute controlled substances. (ECF No. 1.) As part of its investigation into the alleged conspiracy the government obtained authorization under 18 U.S.C. § 2518 to intercept Barragan's communications. Barragan has moved pursuant to the Fourth Amendment and 18 U.S.C. 2518(10)(a) to suppress those intercepted communications. (ECF No. 178.)

Barragan argues that the application seeking authorization to intercept his communications contained false or misleading statements and, but for these statements, the authorization would not have been approved. (ECF No. 179 at 4.) Specifically, he says the following statements in the affidavit are not true:

1. Barragan is the highest-ranking Latin King gang member in Milwaukee;

2. Co-defendant Juan Gonzalez and an unidentified male referred to as UM1-278 had a falling out;

3. UM1-278's identity is unknown; and

4. Barragan engages in counter-surveillance tactics.

(ECF No. 179 at 4.)

### 1.1. Barragan's Role in the Latin King Organization

Barragan contends that the affidavit lacks details to support the assertion that he is the highest-ranking Latin King gang member in Milwaukee. He notes that the only support in the affidavit for this allegation is when Barragan appears to read from court papers and in doing so recounts the allegation that he is "[t]he chairman of the regional council." (ECF No. 179 at 6.)

### 1.2. UM1-278

The affidavit states that investigators had not been able to confirm the identity of UM1-278. Barragan, however, points to an investigative report that predated the affidavit wherein UM1-278 is identified. (ECF No. 179 at 7-8.)

The affidavit also states that it appears that Barragan has a better rapport with UM1-278 than Gonzalez does and points to a "disrespectful phone call" between UM1-278 and Gonzalez to support this assertion. (ECF No. 179 at 8.) Barragan points to a transcript of the purportedly "disrespectful phone call" and notes that the

"disrespectful" nature appears to have been a result of UM1-278 calling from an unfamiliar number. (ECF No. 179 at 9.) Once the confusion is resolved, Gonzalez apologized and they laughed about it. (ECF No. 179 at 9.)

   1.3. Evasive Tactics

The affidavit asserts that Gonzalez engaged in evasive tactics and on that basis speculated that Barragan likewise would be evasive, thus making traditional surveillance difficult. Barragan argues that the affidavit failed to support the assertion that he would engage in evasive tactics. Moreover, he argues that the assertion that Gonzalez was evasive is based on misrepresentations of the facts. For example, the affidavit states that on January 30, 2020, Gonzalez went to UM1-278's residence, scanned the sidewalk, and then slipped between two houses, thus evading surveillance. (ECF No. 179 at 10.) But the surveillance report states that Gonzalez was observed walking off the front porch of the residence. (ECF No. 179 at 10-11.)

Barragan argues that the affiant omitted the fact that on March 9, 2020, he (Barragan) did not engage in evasive tactics. (ECF No. 179 at 11.) Barragan also asserts that the affidavit did not include the fact that on February 1, 2020, Gonzalez did not appear to engage in any evasive tactics. (ECF No. 179 at 11.)

   1.4. Evidence that Barragan was Involved in Controlled Substances

Barragan argues that "the application only shows Barragan had contact with other target phones. The government did not put forth any factual basis that Barragan's

contact with the other targets ever resulted in narcotic transactions. Further, Barragan's contact did not establish or infer that he was Gonzalez's narcotic supplier." (ECF No. 179 at 13-14.)

**2. Legal Standard**

To obtain what is commonly regarded as a *Franks* hearing, the defendant must make "a substantial preliminary showing" of two things. *Franks v. Delaware*, 438 U.S. 154, 155 (1978). First, "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit …." *Id.* at 155-56. Second, "the allegedly false statement is necessary to the finding of probable cause …." *Id.* at 156; *see also United States v. Spears*, 673 F.3d 598, 604 (7th Cir. 2012) (citing *United States v. Whitley*, 249 F.3d 614, 620 (7th Cir. 2001)). "Even deliberately inaccurate representations do not invalidate a warrant if the truthful statements establish probable cause." *United States v. Ferra*, 948 F.2d 352, 353 (7th Cir. 1991); *see also United States v. Gray*, 410 F.3d 338, 344 (7th Cir. 2005) ("A search warrant obtained, in part, with evidence which is tainted can still support a search if the 'untainted information, considered by itself, establishes probable cause for the warrant to issue.'" (quoting *United States v. Oakley*, 944 F.2d 384, 386 (7th Cir. 1991))).

"The role of a judge considering a defendant's motion for a *Franks* hearing is to remove any overt falsehood from the affidavit—or else incorporate any omitted material facts that undermine probable cause, if an omission is what rendered the

affidavit misleading—and see if probable cause remains." *United States v. Daniels*, 906 F.3d 673, 676 (7th Cir. 2018). Probable cause is a "fluid concept" that cannot be "reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). It is a practical and common-sense assessment of whether there is reason to believe that contraband or evidence is located in a particular place. *Id*.

But a wiretap requires more than just probable cause. *See* 18 U.S.C. § 2518(1), (3). Significantly, "[f]ederal law requires each wiretap application to contain a full and complete statement as to one of the following: (1) whether or not other investigative procedures have been tried and failed, (2) why other investigative procedures reasonably appear to be unlikely to succeed if tried, or (3) that other investigative procedures are too dangerous." *United States v. Ceballos*, 302 F.3d 679, 683 (7th Cir. 2002) (citing 18 U.S.C. § 2518(1)(c)). This additional burden to show the necessity of a wiretap "is not great," *United States v. Campos*, 541 F.3d 735, 746 (7th Cir. 2008), and seeks only to avoid law enforcement resorting to "the routine use of wiretaps as an initial step in the investigation." *United States v. Fudge*, 325 F.3d 910, 919 (7th Cir. 2003).

3. **Analysis**

Barragan's specific status within the Latin King organization was irrelevant, and thus its omission would not have negated probable cause or necessity. Even Barragan does not argue that the allegation was material. Barragan argues only that the assertion is not supported by other details in the affidavit. But an affiant need not independently

support every factual assertion in an affidavit, especially not a tangential background detail such as Barragan's status in the Latin King organization. An affiant may simply aver as to such details. In light of the affiant's averment, it is up to Barragan to show not simply that support for the assertion is not found in the affidavit but that it was false and material. Barragan has failed in all respects.

As for Gonzalez's and Barragan's alleged evasive tactics, again, Barragan has failed to show that the affidavit contained a material misstatement or omission. Contrary to Barragan's argument, the investigative report regarding surveillance on January 30, 2020, does not "negate" the statements in the affidavit. The affidavit stated: "when Gonzalez arrived at his destination he lingered on the sidewalk and visually scanned the street around him, rather than using the front porch to enter the suspected SOS [UM1-278's] residence in plain view Gonzalez slipped between two houses out of sight of surveillance." (ECF No. 179 at 10.) This is consistent with the investigative report. (ECF No. 179-1 at 67-68.) The investigative report then notes that Gonzalez is observed leaving the front porch, suggesting that Gonzalez left the residence through the front door. (ECF No. 179-1 at 68.) Insofar as Barragan might be arguing that leaving through the front door suggests Gonzalez did not engage in evasive tactics, the argument is unfounded. Entering through one door and exiting through another could itself be regarded as an evasive technique.

Barragan also argues that the affiant should have included the fact that on February 1, 2020, Gonzalez did not engage in evasive tactics and instead walked down the steps carrying a plastic bag that appeared wrapped around a brick shaped object. (ECF No. 179 at 11.) But that statement *was* included in the affidavit. (Ex. 1 at 21, ¶ 32.)

Barragan also argues that the affiant failed to disclose evidence that Barragan did not engage in evasive tactics. The only example he provides is one instance where Gonzalez went to Barragan's apartment and Barragan's truck was parked at the building. (ECF No. 179 at 11.) But, again, this was a detail set forth in the affidavit. (Ex. 1 at 19, ¶ 30.) And, in any event, leaving a vehicle parked near the owner's residence is hardly inconsistent with a tendency to engage in tactics aimed at evading detection or surveillance by law enforcement.

Barragan also asserts that investigative reports indicate that Gonzalez engaged in evasive tactics because he disappeared, apparently to enter the apartment building through the back door. (ECF No. 179 at 11.) But, Barragan asserts, investigative reports also indicate that the back door is the only entrance to the building. (ECF No. 179 at 11-12.) However, the affiant did not say that Gonzalez used the back door to Barragan's residence, much less attribute it to evasiveness. Barragan does not explain how these omissions were material.

Barragan is also incorrect when he asserts that the government's investigation establishes only that he met with Gonzalez and does not connect these meetings to drug

7

transactions. (ECF No. 179 at 12.) To the contrary, the affidavit establishes, for example, that Barragan told Gonzalez to "check me out when u go shop." (Ex. 1 at 18, ¶ 26.) The affidavit supports the inference that going to "shop" is their word for getting drugs. Subsequent conversations scheduled a meeting for the next day at Barragan's home, and surveillance teams observed Gonzalez going to Barragan's home at the agreed time. (Ex. 1 at 19, ¶¶ 29-30.) Obviously, these facts are not proof of drug dealing, but they do support a finding of probable cause. In fact, it is the very absence of concrete proof that supports the finding that a wiretap is necessary. If investigators had already obtained proof beyond a reasonable doubt, a wiretap would have been unnecessary.

The affiant also reasonably speculated that there might have been a falling out between Gonzalez and UM1-278 given the "disrespectful phone call" between Gonzalez and UM1-278 and the absence of contact between the two following that conversation. (Ex. 1 at 17-18, ¶ 25.) The affiant accurately recounted the nature and tone of the conversation. The affiant explained that the alleged disrespect was a mistake and the result of Gonzalez having not recognized UM1-278's number. (Ex. 1 at 17-18, ¶ 25.) The affiant also stated that, once Gonzalez recognized his mistake, he profusely apologized. (Ex. 1 at 17-18, ¶ 25.)

The affiant's omission of the fact that, following Gonzalez's apologies, UM1-278 said, "Oh, okay," and then they both laughed (ECF No. 179 at 73), was immaterial. In fact, Barragan does not argue how it was material. He just states a conclusion: "Had the

8

entirety of the conversation been included in the government's interception application, probable cause could not have been established to intercept Barragan's communications." (ECF No. 179 at 9.)

The only apparently incorrect statement that Barragan identifies is with respect to the affidavit repeatedly stating that UM1-278 had not been identified. (Ex. 1 at 49, ¶ 79; 57, ¶ 91; 58, ¶ 95.) An investigative report prepared 45 days before the affidavit, however, states that UM1-278 had been positively identified. (ECF No. 179-1 at 71.)

Even if the affiant had stated that UM1-278's identity had been confirmed, probable cause and necessity still would have existed. The wiretap was necessary for reasons other than identifying UM1-278. And the fact that UM1-278 had been identified certainly did not undermine the existence of probable cause.

The affidavit readily sets forth probable cause to believe that Gonzalez is a drug dealer. For example, an undercover investigator made numerous purchases of controlled substances from Gonzalez. (Ex. 1 at 38, ¶ 56.) Barragan was in frequent contact with Gonzalez—684 phone calls or texts in about the first two months of 2020. (Ex. 1, ¶ 41. a.) Many of these conversations involved awkward discussions about going to the "store" for "paint" such that it was easy to recognize that they were not talking about trips to Home Depot. (*See, e.g.*, Ex. 1, ¶¶ 19, 27; *see also id.* ¶¶ 31 (Espinosa discussing that he has "half cans or whole cans" of "paint" to sell) 32 (Espinosa stating "I want to paint half the house").) That these clumsy obfuscations were really about

drugs was a reasonable inference from the totality of the circumstances. Moreover, it is significant that Barragan was currently on federal supervision for a prior drug conviction. (Ex. 1 at 9, ¶ 15. b.) Under the totality of the circumstances, there was probable cause to believe that Barragan was involved in drug dealing and that intercepting his communications on the target phone would produce evidence of drug dealing.

The affidavit also explained why other investigative procedures reasonably appeared to be unlikely to succeed if tried. As discussed, the evasive tactics used by Gonzalez and drug dealers generally made it unlikely that physical surveillance of Barragan would tie together the loose ends necessary to develop a prosecutable case. The drug organization appeared to use lookouts or confederates to identify and deter outsiders in the neighborhoods where the organization operated. For example, an investigator was confronted by a gang member and told to leave the area, and unknown persons would often attempt to identify investigators conducting surveillance. (Ex. 1 at 41, ¶ 60.)

The sources that investigators had developed were unfamiliar with Barragan (Ex. 1 at 35, ¶ 50; 36, ¶ 51; 38, ¶ 55) and the undercover investigator's contacts with Gonzalez were unlikely to lead to Barragan (Ex. 1 at 38-39, ¶ 56). The affiant adequately explained that other methods would be unlikely to uncover the full scope of the organization.

In short, none of the alleged misrepresentations or omissions identified by Barragan were material to the issuance of the warrant.

4. **Conclusion**

Setting aside the alleged misrepresentations, or adding the omissions, the affidavit establishes that

> there is probable cause to believe that a person is committing, has committed, or is about to commit one of the offenses listed in 18 U.S.C. § 2516; that there is probable cause to believe that communications concerning that offense will be obtained through the interception; that normal investigative procedures have been tried and have failed or reasonably appear to be too dangerous or unlikely to succeed if tried; and that there is probable cause to believe that the facilities from which the communications are to be intercepted are being or are about to be used in connection with the offense, or are listed to or commonly used by a person identified in the application. *Id.* § 2518(3).

*United States v. Mares-Martinez*, 240 F. Supp. 2d 803, 814 (N.D. Ill. 2002).

Because Barragan has failed in his burden to make a substantial preliminary showing that the warrant would not have issued but for the alleged misrepresentations or omissions, the court must deny his request for a *Franks* hearing. And, accordingly, the court will recommend that Barragan's motion to suppress be denied.

**IT IS THEREFORE ORDERED** that Barragan's request for a *Franks* hearing (ECF No. 178) is **denied**.

**IT IS FURTHER RECOMMENDED** that Barragan's motion to suppress (ECF No. 178) be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(2), whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation or prior to the Final Pretrial Conference, whichever is earlier. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 10th day of August, 2021.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge